**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **PHILIP KINSLEY**, *et al.*,<br><br>      **Plaintiffs,**<br><br>          v.<br><br>**ANTONY J. BLINKEN, Secretary of the U.S. Department of State**, *et al.*,<br><br>      **Defendants.** | Civil Action No. 21-962 (JEB) |

## <u>MEMORANDUM OPINION</u>

Among the disruptions wrought by the COVID-19 pandemic have been halts and delays in the U.S. visa-processing system. Here, a large group of noncitizens, U.S.-citizen petitioners, associations, and corporations bring suit to challenge the cessation of visa processing in specified countries. They allege as unlawful Defendant State Department's interpretation of several Presidential Proclamations to prevent U.S. consulates and embassies in those countries from adjudicating visas. In now seeking dismissal or summary judgment, the Government argues that the Court is barred from considering Plaintiffs' claims for a range of jurisdictional reasons, and that, even if addressed, their claims are deficient. While the Court concurs with Defendants that some Plaintiffs lack standing or have claims that are now moot, it also concludes that, as to the nine remaining Plaintiffs, their claims are justiciable, and State acted improperly in suspending visa issuance based on the Proclamations. These Plaintiffs thus achieve summary judgment.

I.  **Background**

    A.  Factual Background

    In response to the ongoing pandemic, both Presidents Trump and Biden issued a series of COVID-19 Regional Proclamations that restrict the entry into the United States of immigrants and nonimmigrants who have been in certain countries for a 14-day period preceding any attempt to enter.  See ECF No. 11 (Second Am. Compl.), ¶¶ 68–75; see also Proclamation No. 9984, 85 Fed. Reg. 6,709 (Jan. 31, 2020) (Republic of China); Proclamation No. 9992, 85 Fed. Reg. 12,855 (Feb. 29, 2020) (Iran); Proclamation No. 10143, 86 Fed. Reg. 7,467 (Jan. 25, 2021) (United Kingdom, Ireland, Brazil, South Africa, and the Schengen Area — i.e., 26 European countries that generally allow cross-border travel); Proclamation No. 10199, 86 Fed. Reg. 24,297 (Apr. 30, 2021) (India – Nonimmigrants Only).  These proclamations were issued pursuant to 8 U.S.C. § 1182(f), under which

> [w]henever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may . . . suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

    As of April 2021, the State Department had interpreted "[t]hese proclamations, with certain exceptions, [to] place restrictions on visa issuance and entry into the United States for individuals physically present in China, Iran, Brazil, UK, Ireland, South Africa, and the 26 countries in the Schengen area."  SAC, ¶ 77 (quoting U.S. Department of State – Bureau of Consular Affairs, Visa Services Operating Status Update (Apr. 6, 2021), https://bit.ly/3gquvNH (Visa Services Update)).  As a result, visa applications for individuals from those countries — and India as of April of this year — have not been adjudicated.  Id., ¶ 17.  Department officials have noted, however, that the Proclamations are "based on presence, not citizenship.  So if there

2

[are] capacities in other posts, the situation [of an individual who was a citizen of a barred country going to a non-barred country for two or more weeks before entry] is possible." Id., ¶ 86 (quoting U.S. Dep't of State, Briefing with Consular Affairs Acting Deputy Assistant Secretary for Visa Services Julie M. Stufft on the Current Status of Immigrant Visa Processing (Mar. 1, 2021), https://bit.ly/2W5jyKA (Stufft Briefing)).

The Secretary of State revised the visa procedures for individuals in Proclamation countries on April 8, 2021, to include a National Interest Exception (NIE) for noncitizens who are seeking an immigrant visa or a K-1 nonimmigrant visa, a class of visas used for fiancé(e)s of U.S. citizens to come to the United States. See U.S. Dep't of State, Updates to National Interest Exceptions for Regional COVID Proclamations (Apr. 8, 2021), https://bit.ly/3kjTljo (Updates to NIE). Immigrant visas, it should be noted, are given to eligible applicants who plan to reside permanently in the United States, while nonimmigrant visas are for individuals who plan to live in the U.S. temporarily for a variety of reasons. Under the NIE, individuals seeking visas in the aforementioned categories are exempt from the COVID-19 Regional Proclamations, thus leaving the Proclamations applicable only to noncitizens who are seeking a nonimmigrant, non-K-1 visa. See No. 16-1 (Def. MTD/MSJ) at 7. Other nonimmigrants can also apply for an NIE if their travel is for certain purposes. Id. at 6 (describing exemptions in Proclamations).

In addition to the restrictions imposed by the Proclamations, delays have unsurprisingly emerged in the U.S. visa-processing system worldwide. The system for routine visa processing was entirely suspended from March 2020 to late July 2020. Id. at 2. In late July, U.S. embassies and consulates entered "a phased resumption of visa services" under which they could "resume routine visa services as local conditions and resources allow." Id. (quoting U.S. Department of State – Bureau of Consular Affairs, Suspension of Routine Visa Services (July 22, 2020),

https://bit.ly/3DgTe01).  Recognizing varying conditions around the world, State indicated that

additional services would be provided "[a]s local conditions improve[,] . . . culminating

eventually in a complete resumption of routine visa services."  Updates to NIE.  Services,

however, have still not resumed in full, and the Department has adopted a tiered system of

processing to address the large number of visa applications that remain outstanding.  See Def.

MTD/MSJ at 4–5 (describing the different tiers).

Plaintiffs here are over 180 noncitizens seeking immigrant or nonimmigrant visas, their

U.S. citizen petitioners, as well as U.S. corporations and two U.S. associations.  Id. at 1.  The

noncitizen Plaintiffs have applied for different types of visas, including family-based immigrant

visas, employment-based immigrant visas, employment-based nonimmigrant visas, and K-

nonimmigrant visas for fiancé(e)s of U.S. citizens.  See SAC, ¶¶ 27, 29, 32, 36.  Since this case

was filed, the number of Plaintiffs who have not had their visas adjudicated has diminished.

Many Plaintiffs, moreover, are now subject to the NIE for immigrant and nonimmigrant K-1

visas, including the 143 comprised of U.S. citizens and their foreign-national fiancé(e)s.  Id.,

¶ 29.  The parties filed a joint status report on August 30, 2021, indicating that nine Plaintiffs

remained who do not fall under the NIE, have not yet had their visas adjudicated, and remain

eligible for the visa sought.  See ECF. No. 23 (Joint Status Report).  The claims of these nine are

the only ones still live.

B.  Procedural Background

Plaintiffs originally sued the State Department and Secretary Antony Blinken in April

2021, alleging that the Department's non-adjudication of visas for individuals from Proclamation

countries was unlawful given that 8 U.S.C. § 1182(f), upon which the Government relied, only

governs who is eligible to enter the country, and the issuance of visas is distinct from eligibility

for entry.  They allege that the "no-visa" policy for individuals from Proclamation countries

violates the Administrative Procedure Act as the "unlawful[] with[olding of] agency action," 5

U.S.C. § 706(1), as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law," id. at § 706(2)(A), and as "agency action . . . in excess of . . . authority," id. at

§ 706(2)(C).  See SAC, ¶¶ 93–102.  Plaintiffs also contend that the policy is *ultra vires.*  Id.,

¶¶ 103–07.  They have twice amended their Complaint to reflect evolving circumstances, with

their most recent pleading filed in late May.  See ECF No. 1 (Complaint); ECF No. 7 (Amended

Complaint); SAC (filed May 21, 2021).  In June, Plaintiffs moved for a preliminary injunction

or, in the alternative, for summary judgment.  See ECF No. 15 (Pl. PI/MSJ).  Defendants in turn

moved to dismiss or, in the alternative, for summary judgment.

## II.    Legal Standard

The parties have sought three forms of relief in this case: a preliminary injunction,

dismissal, and summary judgment.  Since the Court will ultimately decide this case on the latter

two grounds, those are the only standards it lays out.

In evaluating Defendants' argument that the case should be dismissed for lack of subject-

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court must "treat the

complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences

that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979))

(internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253

(D.C. Cir. 2005).  This standard governs the Court's considerations of a motion to dismiss under

both Rules 12(b)(1) and 12(b)(6).  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("in passing

on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or

for failure to state a cause of action, the allegations of the complaint should be construed

favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 925–26 (D.C. Cir. 1984) (same).  The

Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor

an inference unsupported by the facts set forth in the Complaint.  Trudeau v. FTC, 456 F.3d 178,

193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation

marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of

proving that the Court has subject-matter jurisdiction to hear its claims.  See Lujan v. Defenders

of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20,

24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the

scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185

F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the

complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a

12(b)(6) motion for failure to state a claim."  Id. at 13–14 (quoting 5A Charles A. Wright &

Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider

materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of

jurisdiction."  Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, LLC v.

EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case – a dismissal

under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the

pleadings").

Federal Rule of Civil Procedure 56(a) requires the Court, upon a party's motion, to "grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  A fact is material if it would change

the outcome of the litigation, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), and a dispute is genuine if the evidence

is such that a reasonable jury could return a verdict for the non-moving party.  Scott v. Harris,

550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  In the event of conflicting evidence on a

material issue, the Court is to construe the conflicting evidence in the light most favorable to the

non-moving party.  Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"Factual assertions in the moving party's affidavits or declarations may be accepted as true

unless the opposing party submits its own affidavits[,] . . . declarations[,] or documentary

evidence to the contrary."  Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87

(D.D.C. 2009) (citing Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)).

 In a case involving a challenge to a final agency action under the APA, the standards for

general summary judgment set forth in Rule 56(c) do not apply because of the limited role of a

court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76,

89–90 (D.D.C. 2006) (citing Nat'l Wilderness Inst. v. United States Army Corps of Eng'rs, 2005

WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C.

1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)).  "[T]he function of the district

court is to determine whether or not as a matter of law the evidence in the administrative record

permitted the agency to make the decision it did."  Mainella, 459 F. Supp. 2d at 90 (internal

citations omitted).  Summary judgment thus serves as the mechanism for deciding, as a matter of

law, whether the agency action is supported by the record and otherwise consistent with the APA

standard of review.  See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in

Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

### III.   Analysis

Defendants preliminarily contend that this case should be dismissed on jurisdictional grounds, both because Plaintiffs lack standing and because the Secretary's actions in this sphere are not subject to judicial review.  On the merits, they argue that the Immigration and Nationality Act bars the adjudication of visas for individuals from Proclamation countries, and that, in any event, such a policy is reasonable, lawful, and entitled to deference.  The Court looks at each position separately.

### A.  Jurisdictional Issues

The Government asserts that the entirety of Plaintiffs' case is barred from review and that specific groups of Plaintiffs lack standing or have claims that are now moot.  See Def. MTD/MSJ at 20–30.

#### 1.  *Justiciability*

Defendants believe that "Plaintiffs cannot challenge the actions of the Secretary of State to implement a proclamation issued by the President under 8 U.S.C. § 1182(f)."  Id. at 20.  They argue that the Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."  Fiallo v. Bell, 430 U.S. 787, 792 (1977) (internal quotation marks and citations omitted); see also Def. MTD/MSJ at 20.  In particular, they suggest that the "principles underlying [the doctrine of consular non-reviewability] similarly preclude review of the Secretary's decision to implement a proclamation issued under 8 U.S.C. § 1182(f) because the President suspended entry, and thus determined that a class of noncitizens were ineligible for a visa."  Def. MTD/MSJ at 21.

This is familiar territory.  This Court and others in this district have already rejected similar arguments rooted in the doctrine of consular non-reviewability because that doctrine only applies once a decision has been reached on a specific application.  See Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) ("[T]he doctrine [of consular non-reviewability] however, is not triggered until a consular officer has made a decision with respect to a particular visa application.") (internal citation and quotation marks omitted); see also Tate v. Pompeo, 513 F. Supp. 3d 132, 142 (D.D.C. 2021), dismissed sub nom. Tate v. Blinken, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021) ("The D.C. Circuit has held that the consular non-reviewability does not apply where plaintiffs 'do not challenge a particular determination in a particular case of matters which Congress has left to executive discretion' but instead improperly promulgate rules in violation of statute.") (internal citation omitted); Gomez v. Trump, 485 F. Supp. 3d 145, 176 (D.D.C. 2020), amended in part, 486 F. Supp. 3d 445 (D.D.C. 2020), and amended in part sub nom. Gomez v. Biden, No. 20-1419, 2021 WL 1037866 (D.D.C. Feb. 19, 2021) ("District courts in this jurisdiction consistently have held that when the suit challenges inaction, as opposed to a decision taken within the consul's discretion, there is jurisdiction.") (internal citations and quotation marks omitted).

Given this repeated determination, there is no reason that the "principles underlying [the consular non-reviewability] doctrine" would preclude the Court from reviewing implementation of policy relating to the Proclamations.  Nor does Plaintiffs' challenge risk "diminish[ing] the President's ability to exercise his broad authority under 8 U.S.C. § 1182(f) to exclude non-citizens."  Def. MTD/MSJ at 22.  Even a successful suit would affect only whether visa applications must be adjudicated, not whether visas should actually be issued or individuals

allowed to enter once they have received a visa.  The Court thus finds the Department's no-visa policy reviewable.

### 2. *Mootness*

Defendants next argue that because consular officers have now adjudicated visas for 74 noncitizen Plaintiffs, those claims and the associated claims of their U.S.-citizen sponsors are moot.  See Def. MTD/MSJ at 23.  Plaintiffs do not contest this, see ECF No. 18 (Pl. Opp.) at 15, and selected Plaintiffs have already filed a Stipulation of Dismissal.  See ECF No. 19.  The Court accordingly will dismiss the claims of any Plaintiffs who have had their visas adjudicated along with related claims from their U.S.-citizen sponsors.

### 3. *Standing: Plaintiffs Seeking Immigrant or K-1 Nonimmigrant Visas*

Defendants also seek to dismiss for lack of standing "noncitizen Plaintiffs, who are seeking an immigrant visa or K[-1] nonimmigrant visa," as well as their U.S.-citizen petitioners and corporation Plaintiffs who are sponsoring immigrant visas.  See Def. MTD/MSJ at 27.  They point out that because "the Secretary issued an NIE for all immigrant and K nonimmigrant visa applicants," there is no other relief this Court can provide.  Id.  Defendants frame this issue as a lack of standing rather than one of mootness because Plaintiffs filed their Second Amended Complaint in May 2021, six weeks after the Secretary issued the NIE.  Plaintiffs' predicament, the Department argues, was thus resolved by the time of refiling, leaving them without a redressable injury.  See ECF No. 20 (Def. Reply) at 6; see also Def. MTD/MSJ at 27.  Plaintiffs counter that "Defendants' argument confuses standing with mootness," Pl. Opp. at 10 (internal citation marks and quotations omitted), and that their claims should be analyzed under the latter framework, which places a greater burden on Defendants to show that claims have been mooted under the doctrine of voluntary cessation.  See True the Vote, Inc. v. Internal Revenue Serv., 831

F.3d 551, 561 (D.C. Cir. 2016) ("[T]he defendant has the burden of establishing that these criteria have been met [in assessing mootness by voluntary cessation], and that is a 'heavy burden.'").

Ultimately, it makes little difference under which framework this case is analyzed, as either way the Court will dismiss this subset of claims.  As a general matter, Defendants are correct that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."  Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473–74 (2007).  Since the NIE was issued before Plaintiffs filed their Second Amended Complaint, their injury should be analyzed "by the state of the world as of the date of the Amended Complaint," and those facts leave this group of Plaintiffs out of luck since the NIE had already lifted the Proclamations for them.  See G&E Real Est., Inc. v. Avison Young-Washington, D.C., LLC, 168 F. Supp. 3d 147, 159 (D.D.C. 2016).  Even if Plaintiffs' preferred mootness analysis were used, however, this Court recently found identical claims to be moot in Milligan v. Blinken, No. 20-2631, 2021 WL 3931880, at *5–6 (D.D.C. Sept. 2, 2021) (concluding under doctrine of voluntary cessation that there was no reasonable expectation plaintiffs would be again subjected to Proclamations, that NIE had "eradicated the effects of the alleged violation caused by the Proclamations," and that claims were not capable of repetition yet evading review).  As a result of the NIE, the eight corporation Plaintiffs petitioning for employment-based immigrant visas also now lack standing.  See ECF No. 15-7 (Affidavits of eight EB IVP Plaintiffs Companies) at 4–11.  The Court will thus dismiss the claims of Plaintiffs seeking immigrant or K-1 nonimmigrant visas, their associated U.S.-citizen petitioners, and corporations sponsoring immigrant visas.

4.  *Standing: Corporation and Association Plaintiffs*

In addition to the corporations petitioning for <u>immigrant</u> visas, Plaintiffs also include corporations and associations with members seeking <u>nonimmigrant</u> visas.  Among them are the Association of Cultural Exchange Programs (ACEO) and the Alliance for International Exchange (AIE).  ACEO "is an association of U.S. employers which has joined to ensure timely processing of visa applications for members of its association."  SAC, ¶ 40.   Its members include U.S. employers who seek "J-1 exchange visas to fill temporary positions" such as at "K-12 schools, summer camps, universities, seasonal tourist destinations, and others."  <u>Id.</u>  The lack of processing of nonimmigrant visas has resulted in a "loss of revenue and risk of closure" for at least some of these employers.  <u>Id.</u>  The Complaint does not contain any allegations related to AIE and what types of visas its members seek, although the attached affidavit specifies that they seek J-1 visas for assorted temporary positions.  <u>See</u> ECF No. 15-7 at 3 (Affidavit of Ilir Zherka). Defendants rejoin that the Plaintiff corporations and associations lack standing because they fail to identify individual applicants or members who have been affected by the Proclamations and that their alleged injuries are thus not particularized.  <u>See</u> Def. MTD/MSJ at 25–27.

Turning first to the association Plaintiffs, "[a]n organization has associational standing to bring suit on its members' behalf when: (1) at least one of its members would have standing to sue in his or her own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Sierra Club v. Fed. Energy Reg. Comm'n</u>, 827 F.3d 59, 65 (D.C. Cir. 2016) (internal citations and quotation marks omitted).  To satisfy the initial prong, a member must meet the traditional elements of standing — namely, that he has (1) "suffered an 'injury-in-fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical'; (2) the injury is 'fairly traceable to the challenged action'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000)).  Plaintiffs bear the burden of establishing these elements.  See Lujan, 504 U.S. at 561. To establish that an individual member has standing, "it is not enough to aver that unidentified members have been injured. . . . Rather, the petitioner must specifically identify members who have suffered the requisite harm."  Chamber of Comm. v. EPA, 642 F.3d 192, 199–200 (D.C. Cir. 2011) (internal quotation marks and citations omitted); see also Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009) (organizational standing requires "plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm").

This is a threshold that AIE and ACEO have failed to clear.  Am. Chemistry Council v. Dep't of Transp., 468 F.3d 810, 815, 820 (D.C. Cir. 2006) ("an organization bringing a claim based on associational standing must show that at least one specifically-identified member has suffered an injury-in-fact").  Nothing in the Second Amended Complaint, the Opposition, the affidavit from AIE's director, or the Joint Status Report identifies a specific member of AIE affected by the Proclamations.  See Pl. Opp. at 4; see also Joint Status Report at 2; Zherka Aff. (all stating AIE's members have suffered harm, but none identifying a member organization or its injury).  Indeed, Plaintiffs nowhere identify who AIE's specific members even are.

ACEO makes more robust allegations about injuries that its member employers face from the non-issuance of J-1 visas, but it also fails to name any "specifically [] identified member" who has suffered an injury-in-fact.  See ECF No. 15-10 at 3–7 (Affidavit of Jeff Laband) (identifying types of harm suffered by sponsors but no specific members); see also Pl. Opp. at 3–

4; SAC, ¶ 40; Joint Status Report at 2.  Since both associations have not shown "that at least one

member . . . has standing to pursue this challenge," Am. Library Ass'n. v. FCC, 406 F.3d 689,

696 (D.C. Cir. 2005), the Court concludes that they lack associational standing; it thus need not

address standing's other elements.

Considering next the corporations, Plaintiffs' briefing could be clearer on "which

corporations may be sponsoring a noncitizen for an employment-based immigrant visa or an

employment-based nonimmigrant visa," Def. MTD/MSJ at 25, but the affidavits do indicate that

there are two corporations, International Teacher Exchange Services and Life Adventures,

seeking employment-based nonimmigrant visas.  See ECF No. 15-10 (EB NIV Plaintiffs

Companies) at 6–7.  In any event, neither corporation identifies an injury-in-fact that is "concrete

and particularized."  International Teacher Exchange Services, which seeks J-1 visas for

teachers, states in its affidavit only that the lack of visa adjudication will cause it to face

"[s]ubstantial revenue loss, will impact US jobs, [and] lost opportunity for all."  Id. at 6

(Affidavit of Rory McNicholas).  Similarly, Life Adventures in its affidavit avers that its partner

employers may go out of business, but as to its own injury it says only that "[t]his has been

extremely frustrating and has caused and will continue to cause our organization to suffer a great

deal of harm."  Id. at 7 (Affidavit of Don Moody).  Most of these alleged injuries, such as an

"impact" on U.S. jobs and "lost opportunit[ies]," are generalized grievances about how visa

delays affect the economy and are insufficient to establish an injury-in-fact.  See, e.g., Warth v.

Seldin, 422 U.S. 490, 499 (1975) (normally no injury "[w]hen the asserted harm is a 'generalized

grievance' shared in substantially equal measure by all or a large class of citizens").  To the

extent that International Teacher Exchange Services alleges a more concrete injury in the form of

"substantial revenue loss," its affidavit does not provide sufficient information for the Court to

14

determine the basis for this injury and whether it is fairly traceable to the non-adjudication of

visas.  As a result, the associations and corporations seeking nonimmigrant visas will be

dismissed.

> 5.  *Standing: Plaintiffs Seeking Employment-Based Nonimmigrant Visas*

Finally, the Department asks that the remaining noncitizen Plaintiffs seeking

employment-based nonimmigrant visas also be dismissed for lack of standing.  Based on the

Joint Status Report, there are nine such individuals.  See Joint Status Report at 5–6.  Under

Defendants' theory, these Plaintiffs lack standing because the COVID-19 pandemic, not the

implementation of the Proclamations, is the true source of their injury.  See Def. MTD/MSJ at

29.  On the contrary, Plaintiffs have alleged an injury flowing from the Proclamations

themselves, as the Department "has refused to process their nonimmigrant visas," to "schedule

interviews or adjudicate their visa applications," or "to issue the visas" as a result of the

Proclamations.  See SAC, ¶ 37.  The resource constraints and backlogs faced by U.S. embassies

and consulates have undoubtedly delayed the processing of visas, but Plaintiffs have still

suffered an injury from the fact that currently "consular officials are categorically precluded

from processing Plaintiffs'" visa applications unless they fall under an exemption, regardless of

the capacity and reopening status of local consulates and embassies.  Young v. Trump, 506 F.

Supp. 3d 921, 936 (N.D. Cal. 2020), appeal dismissed sub nom. Young v. Biden, No. 21-15233,

2021 WL 3507648 (9th Cir. Mar. 16, 2021).  This injury is "fairly traceable" to the

Proclamations, which have made it far more difficult for Plaintiffs to have their visas

adjudicated.  See Pl. Opp. at 2–3 (arguing that injury is "fairly traceable" and discussing

procedural barriers from Proclamations).  This injury is also "likely to be redressed by a

favorable judicial decision" of this Court.  Spokeo Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

The remaining Plaintiffs seeking nonimmigrant visas have thus established standing.

*      *      *

Before leaving the morass of jurisdictional claims behind, one final note should be taken

about the status of the nine remaining nonimmigrant Plaintiffs.  They are at different stages of

the application process — some have not had interviews, and some have visas pending issuance.

Three of these Plaintiffs, for example, have received 221(g) letters, a form of interim refusal of a

visa while the Proclamations remain in effect.  See Joint Status Report at 5–6; see also ECF No.

15-9 at 8 (Affidavit of Carlos Leal) (describing receipt of 221(g) notice indicating visa refused

"until such time as Presidential Proclamation 9993 is no longer in effect"); id. at 10 (Affidavit of

Alexander McWhirter) (same); id. at 21 (Affidavit of Riccardo Sciarretta) (same).  The claims of

these Plaintiffs are not barred by the doctrine of consular nonreviewability.  See Nine Iraqi Allies

Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168

F. Supp. 3d 268, 291–92 (D.D.C. 2016) (visa applicants who received 221(g) letters based on

ongoing "administrative processing" "have not been finally refused, [so] the doctrine of consular

nonreviewability does not bar their claims").  One Plaintiff, Francois Bare, conversely, has had

an NIE denied.  See Joint Status Report at 5.  As a decision has already been made, the Court can

take no further action.  Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021)

("Consular nonreviewability shields a consular official's decision to issue or withhold a visa

from judicial review, at least unless Congress says otherwise.").  There are thus eight Plaintiffs

with live claims, which the Court now considers.

B.  Merits

This case raises many issues previously addressed by district courts in finding against the Government on the suspension of visa adjudications for individuals from Proclamation countries. See Milligan, 502 F. Supp. 3d 302; Gomez, 485 F. Supp. 3d 145; Tate, 513 F. Supp. 3d 132; Young, 506 F. Supp. 3d 921.  Those courts (including this one) each found that a no-visa policy under the Proclamations likely violated the APA and enjoined the Government from relying on the Presidential Proclamations to suspend all visa adjudications for certain plaintiffs from Proclamation countries.  Milligan, 502 F. Supp. 3d at 322.  Plaintiffs rely on those holdings to argue that "a § 1182(f) suspension of entry does not authorize the Department of State . . . to institute a 'no-visa' policy for the affected, eligible individuals prevented from entry into the United States," SAC, ¶ 6, and that the analysis in those opinions should be dispositive. Defendants, meanwhile, offer three bases for why the no-visa policy should be upheld: 1) under the Immigration and Naturalization Act, consular officers must refuse to issue visas to noncitizens where entry is suspended under a proclamation issued pursuant to § 1182(f); 2) their interpretation of 8 U.S.C. § 1182(f) is reasonable and lawful; and 3) deference should be given to the Department's longstanding interpretation of § 1182(f).  This Court groups these arguments into two buckets of analysis but need not dally long in addressing them as the claims essentially repackage positions previously raised and rejected.  The Court ultimately concludes that the Department cannot rely on § 1182(f) to maintain a policy of not adjudicating nonimmigrant visas from Proclamation countries.

1.  Consular Officers' Duty

Defendants lay out a litany of reasons why consular officers must refuse to adjudicate visas for noncitizens whose entry is suspended.  See Def. MTD/MSJ at 31–36.  They start by arguing that individuals barred from entry under § 1182(f) cannot be issued visas under 8 U.S.C.

17

§ 1201(g), which states that "[n]o visa . . . shall be issued to an alien if . . . it appears to the consular officer . . . that such alien is ineligible to receive a visa or such other documentation under section 1182." 8 U.S.C. § 1201(g); see Def. MTD/MSJ at 31–34. As Judge Amit Mehta of this district recently explained, however, this argument "ignores 'the basic distinction between admissibility determinations' i.e., entry determinations, and 'visa issuance that runs throughout the INA.'" Gomez, 485 F. Supp. 3d at 191 (quoting Trump v. Hawaii, 138 S. Ct. 2392, 2414 & n.3 (2018)). "Subsection 1201(g) precludes the issuance of visas only as to persons who are 'ineligible to receive a visa' under Section 1182, not to persons who are only ineligible to enter under that provision." Id. (quoting 8 U.S.C. § 1201(g)). And it is a different section of the INA, 8 U.S.C. § 1182(a), not § 1182(f), that lays out the categories of individuals who are ineligible to receive visas and to be admitted to the United States. Id. at 191–92; see also 8 U.S.C. § 1182(a) (laying out grounds for which noncitizens are "ineligible to receive visas and ineligible to be admitted to the United States," including those based on health, crime, security, and other areas). Several other courts have similarly interpreted 8 U.S.C. § 1201(g), including this one. See Milligan, 502 F. Supp. 3d at 315 ("The Court finds Judge Mehta's interpretation persuasive [as to the § 1201(g) argument] and adopts it here."); Young, 506 F. Supp. 3d at 945 (rejecting argument that § 1201(g) requires denial of visa issuance to individuals barred from entry under § 1182(f)). Defendants' § 1201(g) position again gains no traction.

State next contends that allowing visas to be issued "to individuals who are not permitted to attempt to enter the United States under section 1185(a)(1)" of the INA would result in confusion for border officials and erode U.S. border protections. See Def. MTD/MSJ at 33–34; see also id. at 39–40. Issuing visas to these individuals would admittedly result in an unusual system in which a visa recipient from a Proclamation country could not enter the United States

without having been physically present in a non-Proclamation country for more than two weeks prior to entry.  This in turn might place more strain on border-protection officers to determine whether the entering individual had in fact stayed the requisite period in the non-Proclamation country.  Yet, such a system would be consistent with Acting Deputy Assistant Secretary Stufft's acknowledgment that an otherwise-barred individual could conceivably enter after a stay elsewhere.  See Stufft Briefing (describing how individual could wait for processing in third country).

Nor is it an insurmountable obstacle that 8 U.S.C. § 1185(a)(1) makes it "unlawful . . . for any alien to . . . enter or attempt to . . . enter the United States except under [the rules and limitations] . . . as the President may prescribe."  Def. MTD/MSJ at 33 (arguing that entry of Proclamation plaintiffs inconsistent with § 1185(a)(1)).  As Chief Judge Beryl Howell explained in Tate, "A visa recipient subject to one of the Presidential Proclamations would violate § 1185(a) by immediately attempting entry but would not be subject to the entry restriction if she (1) quarantined in a non-affected country before attempting entry or (2) waited until the Proclamation expired before attempting entry."  513 F. Supp. 3d at 145.  This Court agrees with this logic and concludes that, given the possibility of an applicant's first quarantining in a non-Proclamation country, adjudication of Plaintiffs' visa requests is not inconsistent with the entry restrictions.

The Government also points to 8 U.S.C. § 1101, which defines "immigrant visas" and "nonimmigrant visas" as visas issued to "eligible" immigrants or nonimmigrants.  See Def. MTD/MSJ at 34; see also 8 U.S.C. § 1101(a)(16), (a)(26).  Under the Department's reading, "[t]hose provisions are most sensibly read to refer to a noncitizen who is eligible to lawfully enter the United States, because a noncitizen who is not permitted to enter is not eligible to

immigrate." Def. MSJ/MTD at 34.  This reading once again conflates the distinction between individuals eligible to receive a visa and individuals eligible to enter the country.  See Gomez, 485 F. Supp. 3d at 191 (distinguishing between those "ineligible to receive a visa" and those "who are only ineligible to enter under that provision").

State also suggests that consular officers who issue a visa to someone not eligible to enter under § 1182(f) may violate the statutory requirement to review the Automated Visa Lookout system before issuing a visa because individuals subject to the Proclamations will be "included in the . . . system" as excludable aliens.  See Def. MTD/MSJ at 36; see also Immigration Act of 1990, Pub. L. No. 101-649, § 601(c) (8 U.S.C. § 1182 note) (requiring development of "protocols and guidelines for updating lookout books and the automated visa lookout system . . . for the screening of aliens applying for visas for admission").  Once again, Defendants do not adequately explain how "entry" under § 1182(f) relates to excludability under the Automated Visa Lookout system or how Proclamation Plaintiffs would be incorporated into the system.  See Tate, 513 F. Supp. 3d at 145–46 (rejecting for these reasons argument based on Automated Visa Lookout system).

Defendants' final attempt to square their interpretation with another section of the INA similarly runs aground.  They compare the entry restrictions in § 1182(f) to those in 8 U.S.C. § 1182e and § 1182f, which classify requirements not to issue visas to certain individuals engaged in specified medical practices under the heading "denial of entry."  This asks the Court to read too much into a statutory heading, especially when § 1182e notably states both that "the Secretary of State may not issue any visa to, and the Attorney General may not admit to the United States" specified individuals — explicitly distinguishing between visa issuance and

admission or entry.  See 8 U.S.C. § 1182e(a) (emphasis added).  At the end of the day, consular

officers are not duty bound to deny visas to these Plaintiffs.

###### 2.   *Deference to Department's Longstanding Interpretation of § 1182(f)*

Moving on from the text of the INA, Defendants argue that their "interpretation of 8

U.S.C § 1182(f) is both reasonable and lawful."  Def. MTD/MSJ at 37.  Relatedly, they suggest

that their interpretation is entitled to deference since it has "the power to persuade" under

Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (persuasiveness of agency's interpretation

depends on "the thoroughness evident in its consideration, the validity of its reasoning, [and] its

consistency with earlier and later pronouncements"); see also Def. MTD/MSJ at 40–41; Mount

Royal Joint Venture v. Kempthorne, 477 F.3d 745, 754 (D.C. Cir. 2007) ("[I]f the agency

enunciates its interpretation through informal action that lacks the force of law, we accept the

agency's interpretation only if it is persuasive.").

In particular, State relies on the fact that since 1985, § 1182(f) has been used "as a basis

for visa refusal," and "historically, proclamations issued under section 1182(f) have delegated

authority exclusively to the Secretary of State to implement the restrictions."  Def. MTD/MSJ at

37.  It also points to its Foreign Affairs Manual as evidence of this longstanding practice and

explains that the Manual's relevant section "advises consular officers that the basis on which

applicants must be denied visas [is] established by law and lists section 1182(f) as such a ground

of refusal."  Id. at 38.  The Manual also lists several Presidential Proclamations as specific

examples that require refusals of visas.  Once again, this Court and others have spurned such

arguments because, "[g]iven the clarity of section 1182(f)[,] . . . this Court finds no basis to defer

to State's practice, however well established it may be."  Milligan, 502 F. Supp. 3d at 315; see

also Tate, 513 F. Supp. 3d at 145–46 (rejecting reliance on State's historical practice because

"[n]o matter how firmly entrenched[,] . . . past practice cannot provide a justification for agency action clearly contrary to statute").

Defendants also contend that "prior to the Court's order in Gomez, courts have consistently accepted the application of restrictions imposed under section 1182(f) as a basis for visa denial" — for example, in cases challenging visa denials under Presidential Proclamation 9645, better known as the Travel Ban.  See Def. MTD/MSJ at 39.  Those cases, however, often arose after visas had already been denied, and they dealt with the interplay between § 1182(f) and a waiver system under Presidential Proclamation 9645.  The specific question of delaying visa adjudications because of an entry ban did not arise.  More importantly, there is no reason that the Court should rely on earlier D.D.C. cases dealing with a different Presidential Proclamation while ignoring more recent decisions from multiple courts here and elsewhere addressing precisely the Proclamations at issue.

Defendants largely recycle these and other earlier arguments to support their claim that they are entitled to Skidmore deference.  Id. at 41–42 (pointing to FAM, Automated Visa Lookout system, and relationship between § 1201(g) and § 1182(f) as evidence of persuasiveness).  State unquestionably has "specialized experience" and "broader . . . information available" on the visa system than the courts do.  See United States v. Mead Corp., 533 U.S. 218, 234 (2001) (internal citations and quotation marks omitted).  This Court, however, has found "no basis to defer to State's practice" on this issue given the statute's clarity, Milligan, 502 F. Supp. 3d at 315, and the consistency of the Department's pronouncements or other indicators of persuasiveness do not alter this finding.  Given the consensus among district courts that Defendants have not put forth "any statutory authority that would permit the suspension of th[e] ordinary process [for adjudicating visas]," Gomez, 485 F. Supp. at 194, there is no reason

to conclude that their interpretation has the power to persuade.  See, e.g., Young, 506 F. Supp. 3d at 945 ("Defendants identify no statutory authority that would authorize consular officers to cease processing and adjudicating qualifying visas" beyond § 1201(g)).

 In sum, Defendants have not shown that the Court should defer to their position on § 1182(f).  It thus concludes that State's reliance on this section to refuse to adjudicate visas for nonimmigrant Plaintiffs in Proclamation countries is not in accordance with the law.

C.  Other Relief

In addition to asking this Court to find State's policy unlawful, Plaintiffs seek other relief, including "the immediate reissuance of visas" that have been issued but expired because of the Proclamations, the "immediate issuance of visas to plaintiffs who have been approved," and immediate rescheduling of interviews and extensions of other relevant deadlines so that Plaintiffs' visas will not be delayed.  See SAC at 43–44.  This is a bridge too far.  As has previously been made clear, the Court "takes no position on whether the Defendants must issue visas to each Plaintiff named in this suit," Milligan, 502 F. Supp. 3d at 316, nor does it in any way suggest that Plaintiffs should jump to the front of the line in having their applications processed.  The Court simply holds that the Department cannot rely on the Presidential Proclamations as a basis to cease visa adjudications for nonimmigrant Plaintiffs from the affected countries.

Finally, the Court notes that the Biden Administration recently announced that it will ease pandemic-related travel restrictions on fully vaccinated travelers from Proclamation countries beginning in "early November."  See David Shepardson & Andrea Shalal, U.S. to relax travel restrictions for vaccinated foreign air travelers in November, REUTERS (Sept. 21, 2021), https://reut.rs/3zRNUxV.  Although the specifics are not yet clear, this change in policy may ultimately moot the remaining Plaintiffs' claims and those of individuals similarly situated.

23

**IV**.   **Conclusion**

For the foregoing reasons, the Court: 1) will dismiss as moot the claims of Plaintiffs who have already had their visas adjudicated; 2) dismiss for lack of standing the claims of Plaintiffs seeking immigrant and nonimmigrant K-1 visas and associated petitioners and corporations; and 3) dismiss for lack of standing the claims of the association and corporation Plaintiffs petitioning for nonimmigrant visas.  For the relevant remaining Plaintiffs, the Court will grant their Motion for Summary Judgment and deny Defendants' Motion to Dismiss and Motion for Summary Judgment.  A contemporaneous Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  October 5, 2021